UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE M DIXON,<br><br>    Plaintiff,<br><br>    v.<br><br>PARTIDA, et al.,<br><br>    Defendants. | Case No. 22-cv-04461-JST<br><br>**ORDER OF PARTIAL SERVICE; ORDERING DEFENDANTS TO SHOW CAUSE** |

Plaintiff, an inmate housed at Salinas Valley State Prison ("SVSP"), has filed a *pro se* action pursuant to 42 U.S.C. § 1983. His complaint (ECF No. 1) is now before the Court for review under 28 U.S.C. § 1915A. Plaintiff has been granted leave to proceed *in forma pauperis* in a separate order.

## DISCUSSION

### A. Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1), (2). *Pro se* pleadings must, however, be liberally construed. *See United States v. Qazi*, 975 F.3d 989, 993 (9th Cir. 2020).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the

grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted). While Rule 8 does not require detailed factual allegations, it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A pleading that offers only labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement does not suffice. *Id.*

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

**B.     Complaint**

The complaint names the following SVSP correctional officers as defendants: CSR auditors Jane/John Doe Nos. 1 and 2; correctional counselor I. Mondragon; correctional counselor Gamboa; correctional counselor Partida; Chief Deputy Warden E. Borla; Associate Warden V. Solis; correctional counselor Curiel; and correctional counselor Gaither. The complaint also names as defendants the following California Correctional Health Care Services ("CCHCS") officials: Deputy Director of Institution Operations J. Clark; and Director T. Foss.

The complaint makes the following allegations.

Plaintiff is classified as high risk medical, is mobility impaired, and has been prescribed Clozaril. Plaintiff has a February 8, 2021 medical chrono stating that he must be endorsed to a Clozaril maintenance prison, i.e. an institution capable of prescribing Clozaril and monitoring inmates on Clozaril. Inmates taking Clozaril must be monitored because Clorazil can cause serious health issues, such as abdominal pain, nausea, vomiting, chest pain, fatigue, dyspnea, syncope and seizure. On or about August 5, 2021, Plaintiff was endorsed to SVSP. Plaintiff has been housed at SVSP since at least December 2021.

SVSP is not a Clozaril maintenance prison. As a result, Plaintiff has been suffering side effects from Clozaril (blurred vision, headache, and a spinning sensation) that have not been addressed. In March 2022, prison psychiatrist R. Mariano and SVSP mental health chief Yanez informed SVSP prison staff, including correctional counselor Campanga, that Plaintiff should be

2

housed at an institution capable of monitoring him while on Clozaril. Dr. Mariano stated that he could not effectively treat Plaintiff while Plaintiff was housed at SVSP because he required qualified nursing staff to examine Plaintiff. In chronos dated March 30, 2022, May 14, 2022, and June 2, 2022, the classification committee agreed that Plaintiff should not be housed at SVSP and should be endorsed to an institution capable of prescribing Clozaril. On June 2, 2022, a conference was held and a level two override was granted, allowing for Plaintiff's transfer to Valley State Prison and Mule Creek State Prison, both of which are Level II prisons and Clozaril maintenance prisons. Plaintiff was put up for transfer in June 2022 but his transfer was blocked by defendants Mondragon, Curiel, Gaither, Borla, Solis and Jane/John Doe CSR auditor.

For five days in July 2022, Plaintiff was unable to obtain his medication because SVSP does not keep Clozaril in stock and must special order it, unlike Clozaril maintenance prisons. During those five days, Plaintiff suffered severe side effects from withdrawal from Clozaril, including severe abdominal pain, severe headaches, insomnia, tremors, and flu-like aches. Upon learning of Plaintiff's lack of access to Clozaril and related withdrawal symptoms, Dr. Mariano informed his supervisor, Dr. Crayton, that he could not treat Plaintiff while Plaintiff was housed at SVSP because SVSP could not ensure regular access to Clozaril. Dr. Crayton relayed his information to defendants Clark and Foss but defendants Clark and Foss did not have Plaintiff transferred.

Plaintiff remains housed at SVSP.

The complaint makes the following additional allegations regarding defendants Partida and Gamboa. Defendant Partida endorsed Plaintiff to SVSP without the required committee review despite knowing that SVSP is not a Clozaril maintenance prison. In December 2021, defendant Partida transferred Plaintiff out of SVSP's PIP housing to SVSP's EOP housing. On December 31, 2021, defendant Gamboa gave Plaintiff a notice of transfer dated for January 4, 2022 or later, and informed Plaintiff that he would be transferred to Mule Creek State Prison, stating that her superiors knew that SVSP was not the appropriate housing for someone on Clozaril.

Plaintiff seeks monetary damages and an injunction compelling that Plaintiff be transferred to Mule Creek State Prison or Valley State Prison, both of which are Clozaril maintenance

3

1  facilities.

2  **C.    Legal Causes of Action**

3  Plaintiff alleges that defendants Mondragon, Curiel, Gaither, Borla, Solis, Jane/John Doe CSR auditor, Partida, Gamboa, Clark, and Foss acted with deliberate indifference to his serious medical needs when defendants Mondragon, Curiel, Gaither, Borla, Solis, and Jane/John Doe CSR auditor blocked his transfer to a Clozaril maintenance prison; when defendants Gamboa, Clark, and Foss failed to have Plaintiff transferred to a Clozaril maintenance prison; and when defendant Partida endorsed Plaintiff's housing at SVSP, a non-Clozaril maintenance facility. Plaintiff also alleges that Defendants' actions and inactions violated the Equal Protection Clause because other inmates on Clozaril are housed at Clozaril maintenance prisons. In addition, Plaintiff alleges that defendant Partida violated the Due Process Clause when she endorsed Plaintiff's housing at SVSP without committee approval, as required by prison regulations.

Liberally construed, the allegations state cognizable claims against defendants Mondragon, Curiel, Gaither, Borla, Solis, Partida, Gamboa, Clark, and Foss for violation of the Equal Protection Clause and of the Eighth Amendment's prohibition on deliberate indifference to an inmate's serious medical needs. Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (prison official is deliberately indifferent if he knows of and disregards excessive risk to inmate health or safety by failing to take reasonable steps to abate it); *Gerhart v. Lake County Montana*, 637 F.3d 1013, 1020 (9th Cir. 2011) (where state action does not implicate a fundamental right or a suspect classification, plaintiff can establish equal protection "class of one" claim by demonstrating that state actor (1) intentionally (2) treated him differently than other similarly situated persons, (3) without rational basis) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)).

However, Plaintiff has not stated a cognizable due process claim against Defendant Partida. The violation of a prison regulation requiring that a committee approve a housing endorsement does not implicate the Due Process Clause because the violation does not result in a deprivation that imposes an "atypical and significant hardship on the inmate in relation to the

4

ordinary incidents of prison life," or (2) state action that "will inevitably affect the duration of [a] sentence." *See, e.g., Sandin v. Conner*, 515 U.S. 472, 484 (1995) (changes in conditions so severe as to affect sentence imposed in unexpected manner implicate Due Process Clause, whether or not they are authorized by state law).  In addition, there is no liability under Section 1983 for violating state law or prison policy.  *See Owe v. Gwinn*, 264 F.3d 817, 824 (9th Cir. 2001) ("To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress.") (internal quotation marks and citation omitted); *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (no liability under § 1983 for violating prison policy).  The due process claim is DISMISSED with prejudice because the deficiency could not possibly be cured by the allegation of other facts.  *See Schmitt v. Kaiser Found. Health Plan of Washington*, 965 F.3d 945, 960 (9th Cir. 2020) ("'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts'") (citing *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)).

The Court DISMISSES the Doe defendants from this action without prejudice.  The use of "John Doe" or "Jane Doe" to identify a defendant is not favored in the Ninth Circuit, *see Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980), in part because it is effectively impossible for the United States Marshal to serve an anonymous defendant.  The Court's general practice is to dismiss Doe defendants without prejudice and, if the plaintiff is able to identify the unknown defendant through discovery, allow the plaintiff leave to amend the complaint to name the intended defendant.  *See Gillespie*, 629 F.2d at 642.  Plaintiff may seek to determine the identity of the John/Jane Doe defendants through discovery and then, after he has determined the John/Jane Doe defendants' identities, request leave to amend the complaint to add these John/Jane Doe defendants.

**D.     Order to Show Cause Why Preliminary Injunction Should Not Issue**

Plaintiff has requested immediate transfer to a Clozaril maintenance prison, which the Court construes as a request for a preliminary and permanent injunction.  For the reasons set forth below, Defendants are ORDERED TO SHOW CAUSE why a preliminary injunction should not

issue requiring that Defendants immediately transfer Plaintiff to a Clozaril maintenance prison.

### 1. Preliminary Injunction Standard

The Prisoner Litigation Reform Act of 1995 ("PLRA") restricts the power of the court to grant prospective relief in any action involving prison conditions. *See* 18 U.S.C. § 3626(a). Section 3626(a)(2) permits the court to enter a temporary restraining order or preliminary injunction "to the extent otherwise authorized by law" but requires that such an order "be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." *See* 18 U.S.C. § 3626(a)(2). The court must give "substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief." *Id.*

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008) (noting that such remedies are extraordinary, and not granted as of right). The party seeking the injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009). "The Ninth Circuit weighs these factors on a sliding scale, such that where there are only 'serious questions going to the merits'—that is, less than a 'likelihood of success on the merits'—a preliminary injunction may still issue so long as 'the balance of hardships tips *sharply* in the plaintiff's favor' and the other two factors are satisfied." *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (emphasis in original)). Even where the balance tips sharply in the plaintiff's favor, however, the plaintiff must still make the threshold showing of likely success on the merits or a serious legal question. *See Leyva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) ("[E]ven certainty of irreparable harm has never *entitled* one to a stay.") (emphasis in original). In addition, the issuance of a preliminary injunction is at the discretion of the district court. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

//

### 2. Analysis

The Court finds that Plaintiff has demonstrated there is a likelihood of success on the merits, that the balance of hardships tips sharply in his favor, that he is likely to suffer irreparable harm, and that an injunction is in the public interest.

The Court first finds that there is a likelihood of success on the merits. According to the prison records attached as exhibits to the complaint, prison officials are in agreement that Plaintiff should be housed at an institution capable of prescribing Clozaril. Plaintiff has a February 7, 2021 mental health chrono requiring endorsement to an institution capable of prescribing Clozaril, ECF No. 1-1 at 20, 23; in March 2022, two prison mental health professionals – staff psychiatrist R. Mariano and SVSP Chief of Mental Health Yanez – recommended transferring Plaintiff to an institution that provides Clozaril, *id.*; from March to June 2022, the Classification Committee twice referred Plaintiff for a non-adverse transfer to an institution capable of prescribing Clozaril, ECF No. 1-1 at 20-22 (March 30, 2022 chrono referring Plaintiff for transfer to Valley State Prison); 23-25 (June 2, 2022 chrono referring Plaintiff for transfer to Mule Creek State Prison); and on May 14, 2022, SVSP granted Grievance Log No. 221619 requesting transfer to an institution designated for Clozaril treatment, ECF No. 1-1 at 10. Despite recommendations by medical professionals and agreement by correctional officials, Plaintiff remains housed at SVSP. The record supports the claim that Defendants knew of and disregarded a substantial risk of serious harm to Plaintiff resulting from being housed at an institution incapable of safely prescribing Clozaril, but failed to take reasonable measures to abate the risk. *Farmer*, 511 U.S. at 847.

Plaintiff has also demonstrated that he may suffer irreparable harm if not transferred to an institution designated for Clozaril treatment. Plaintiff is suffering from side effects from Clozaril that go unaddressed, and SVSP has been unable to ensure a regular supply of Clozaril.

Given that prison doctors have opined that Plaintiff cannot be safely maintained on Clozaril unless he is housed at an institution designated for Clozaril treatment, the balance of equities tips in his favor.

Finally, an injunction would be in the public interest. The public has an interest in

protecting inmates' Eighth Amendment right to be free from deliberate indifference to their serious medical needs. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

### 3. Order to Show Cause

By September 23, 2022, Defendants are ORDERED TO SHOW CAUSE why they, and each of them, and their officers, agents, servants, employees, and attorneys, and any other person or entity subject to their control or acting directly or indirectly in concert or participation with Defendants, should not be ordered to immediately transfer Plaintiff to a Clozaril maintenance prison. By October 7, 2022, Plaintiff shall file his response to Defendants' answer to the order to show cause.

Rule 65(c) of the Federal Rules of Civil Procedure provides that a district court may grant a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The district court retains discretion "as to the amount of security required, *if any*." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation marks and citations omitted) (emphasis in original). In light of Plaintiff's indigent status, the Court finds it appropriate to waive a bond. *See Taylor-Failor v. County of Hawaii*, 90 F.Supp.3d 1095, 1103 (D. Haw. 2015) *869 ("Plaintiffs are individuals of limited financial means and there is a significant public interest underlying this action.").

## CONCLUSION

For the foregoing reasons, the Court orders as follows.

1. The following defendant(s) shall be served: Salinas Valley State Prison correctional counselor I. Mondragon; Salinas Valley State Prison correctional counselor Gamboa; Salinas Valley State Prison correctional counselor Partida; Salinas Valley State Prison Chief Deputy Warden E. Borla; Salinas Valley State Prison Associate Warden V. Solis; Salinas Valley State Prison correctional counselor Curiel; Salinas Valley State Prison correctional counselor Gaither; California Correctional Health Care Services deputy director of institution operations J. Clark; and California Correctional Health Care Services director T. Foss.

Service on the listed defendant(s) shall proceed under the California Department of Corrections and Rehabilitation's ("CDCR") e-service program for civil rights cases from prisoners in the CDCR's custody.  In accordance with the program, the Clerk is directed to serve on the CDCR via email the following documents: the operative complaint, this order of service, a CDCR Report of E-Service Waiver form, a summons, and a consent or declination to magistrate judge jurisdiction form. The Clerk also shall serve a copy of this order on the Plaintiff.

No later than 40 days after service of this order via email on the CDCR, the CDCR shall provide the court a completed CDCR Report of E-Service Waiver advising the court which defendant(s) listed in this order will be waiving service of process without the need for service by the United States Marshal Service ("USMS") and which defendant(s) decline to waive service or could not be reached. The CDCR also shall provide a copy of the CDCR Report of E-Service Waiver to the California Attorney General's Office which, within 21 days, shall file with the Court a waiver of service of process for the defendant(s) who are waiving service.

Upon receipt of the CDCR Report of E-Service Waiver, the Clerk shall prepare for each defendant who has not waived service according to the CDCR Report of E-Service Waiver a USM-205 Form. The Clerk shall provide to the USMS the completed USM-205 forms and copies of this order, the summons, and the operative complaint for service upon each defendant who has not waived service. The Clerk also shall provide to the USMS a copy of the CDCR Report of E-Service Waiver.

2. Liberally construed, the complaint states cognizable claims for violation of the Equal Protection Clause and the Eighth Amendment's prohibition on deliberate indifference to an inmate's serious medical needs against defendants Mondragon, Curiel, Gaither, Borla, Solis, Partida, Gamboa, Clark, and Foss.

3. The due process claim against defendant Partida is DISMISSED with prejudice. The Doe defendants are DISMISSED from this action without prejudice.

4. By September 23, 2022, Defendants are ORDERED TO SHOW CAUSE why they, and each of them, and their officers, agents, servants, employees, and attorneys, and any other person or entity subject to their control or acting directly or indirectly in concert or participation

9

1  with Defendants, should not be ordered to immediately transfer Plaintiff to a Clozaril maintenance

2  prison. By October 7, 2022, Plaintiff shall file his response to Defendants' answer to the order to

3  show cause. The Clerk shall send a courtesy copy of this order to the California Attorney

4  General's Office.

5       5.     In order to expedite the resolution of this case, the Court orders as follows:

6       a.     No later than 91 days from the date this order is filed, Defendants must file

7  and serve a motion for summary judgment or other dispositive motion. If Defendants are of the

8  opinion that this case cannot be resolved by summary judgment, Defendants must so inform the

9  Court prior to the date the motion is due. A motion for summary judgment also must be

10  accompanied by a *Rand* notice so that Plaintiff will have fair, timely, and adequate notice of what

11  is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 939 (9th Cir.

12  2012) (notice requirement set out in *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), must be

13  served concurrently with motion for summary judgment).[1]

14       b.     Plaintiff's opposition to the summary judgment or other dispositive motion

15  must be filed with the Court and served upon Defendants no later than 28 days from the date the

16  motion is filed. Plaintiff must bear in mind the notice and warning regarding summary judgment

17  provided later in this order as he prepares his opposition to any motion for summary judgment.

18       c.     Defendants shall file a reply brief no later than 14 days after the date the

19  opposition is filed. The motion shall be deemed submitted as of the date the reply brief is due. No

20  hearing will be held on the motion.

21       6.     Plaintiff is advised that a motion for summary judgment under Rule 56 of the

22  Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must

23  do in order to oppose a motion for summary judgment. Generally, summary judgment must be

24  granted when there is no genuine issue of material fact – that is, if there is no real dispute about

---

[1] If Defendants assert that Plaintiff failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a), Defendant must raise such argument in a motion for summary judgment, pursuant to the Ninth Circuit's opinion in *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc) (overruling *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), which held that failure to exhaust available administrative remedies under the Prison Litigation Reform Act, should be raised by a defendant as an unenumerated Rule 12(b) motion).

any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(c), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962–63 (9th Cir. 1998) (en banc) (App. A). (The *Rand* notice above does not excuse Defendants' obligation to serve said notice again concurrently with a motion for summary judgment. *Woods*, 684 F.3d at 939).

7. All communications by Plaintiff with the Court must be served on Defendants' counsel by mailing a true copy of the document to Defendants' counsel. The Court may disregard any document which a party files but fails to send a copy of to his opponent. Until Defendants' counsel has been designated, Plaintiff may mail a true copy of the document directly to Defendants, but once Defendants are represented by counsel, all documents must be mailed to counsel rather than directly to Defendanst.

8. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

9. Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

10. Any motion for an extension of time must be filed no later than the deadline sought to be extended and must be accompanied by a showing of good cause. Plaintiff is cautioned that

he must include the case name and case number for this case on any document he submits to the Court for consideration in this case.

**IT IS SO ORDERED.**

Dated: September 13, 2022



JON S. TIGAR
United States District Judge